UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

**FILED**
**JAN 28 2014**

| | | |
|---|---|---|
| DAVID A. GATES, | * | CIV 11-3013-RAL |
| Plaintiff, | * | |
| vs. | * | OPINION AND ORDER |
| | * | GRANTING DEFENDANTS' |
| BLACK HILLS HEALTH CARE | * | MOTION FOR SUMMARY |
| SYSTEMS (BHHCS), THE | * | JUDGMENT |
| DEPARTMENT OF VETERANS | * | |
| AFFAIRS, and THE UNITED STATES, | * | |
| Defendants. | * | |

Plaintiff David A. Gates (Gates), a retired veteran, brought this suit against Defendant United States Government (Government)[1] under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346,[2] alleging that the Government invaded his privacy while he participated in a drug and alcohol treatment program at the Department of Veterans Affairs (VA) domiciliary in Hot Springs, South Dakota. Doc. 1.[3] Thereafter, Gates filed a second suit under the FTCA alleging that the Government retaliated against him for his filing a complaint with the VA Office of Inspector General. CIV 12-3011-RAL, Doc. 1. This Court consolidated the two cases on Gates's

---

[1] Gates also named agencies of the Government—the Department of Veterans Affairs and Black Hills Health Care Systems—as defendants. Because a federal agency cannot be sued under the FTCA, the United States is the proper defendant. Duncan v. Dep't of Labor, 313 F.3d 445, 447 (8th Cir. 2002) (per curiam).

[2] Gates's complaint in CIV 11-3013-RAL also states that his case "arises" under the United States Constitution, HIPPA, 18 U.S.C. § 2701, and SDCL sections "22-1 et seq and 27A-12, et seq." However, none of these laws provide jurisdiction for the sort of tort suit against the United States that Gates is asserting. The impact of these laws on Gates's claims are discussed herein.

[3] This Court uses Doc. followed by a number to refer to the document number of pleadings filed in the Case Management/Electric Case Filing System in this case—CIV 11-3013-RAL. When referring to a document number in Gates's other case, the case number CIV 12-3011-RAL will be specified.

1

motion. Doc. 39. The Government moves to dismiss Gates's retaliation claims under Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3), or in the alternative, for summary judgment on all of Gates's claims. Docs. 47, 50. Because there are no genuine issues of material fact and the Government is entitled to judgment as a matter of law, this Court grants the Government's motion for summary judgment.

I.      **Facts**

The Government complied with Local Rule 56.1(A) of the Civil Local Rules of Practice of the United States District Court for the District of South Dakota by filing a statement of material facts along with its motion for summary judgment. Doc. 49. Local Rule 56.1(B) required Gates, the party opposing the Government's motion for summary judgment, to "respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. L.R. 56.1(B). Gates did not file such a response under Local Rule 56.1(B), but did file a memorandum in opposition to the Government's motion for summary judgment in which he states that he agrees with "most of" the Government's material facts. Doc. 51 at 1. Although Gates provided some commentary in response to certain of the Government's statement of material facts, he did not include any citation to the record to support such commentary. Further, the vast majority of Gates's commentary on the facts did not contradict the Government's material facts but, instead, either offered argument or provided assertions that do not create genuine issues of material fact. Many of the issues Gates discussed in his memorandum are irrelevant to whether summary judgment should enter in favor of the Government. Nevertheless, this Court is mindful of its duty to construe pro se pleadings liberally, Bracken v. Dormire, 247 F.3d 699, 703 (8th Cir. 2001), and will therefore attempt, where possible, to draw the facts from portions of the Government's

2

statement of material facts either accepted or not addressed by Gates's memorandum in opposition to the Government's motion for summary judgment.

On September 15, 2008, Gates was admitted to a drug and alcohol treatment program at the Black Hills Healthcare Systems (BHHCS) domiciliary in Hot Springs, South Dakota. Doc. 49 at ¶ 4. Upon his admission to the program, Gates was given a copy of the Veterans Health Administration domiciliary handbook, which discussed, among other things, the rules governing patients' use of VA computers, the program's policy of randomly testing patients for drugs and alcohol use, and the VA's closed circuit surveillance system (CCTV) in access points and public areas within the facility. Doc. 49 at ¶ 5; Doc. 48-1. Gates signed several documents relating to these rules and policies, including an acknowledgment that he had read and understood the information in the handbook, Doc. 49 at ¶ 6; a treatment contract that conditioned his acceptance into the program upon his consent to random drug and alcohol testing, Doc. 49 at ¶¶ 28-30; Doc. 29-3; and a document entitled "Guidelines for Computer Use by Patients" that stated "COMPUTER USE WILL BE MONITORED. IF GUIDELINES ARE VIOLATED, YOUR ACCESS WILL BE REMOVED IMMEDIATELY," Doc. 49 at ¶ 8, 10; Doc. 29-6. During orientation to the program, another patient gave Gates a tour of the facility and advised him that the facility was monitored by a CCTV system. Doc. 49 at ¶ 34. Gates was already aware of the CCTV system because he had previously participated in a treatment program at the facility. Doc. 49 at ¶ 35.

While in treatment, Gates participated in the VA Compensated Work Therapy (CWT) program, through which he worked as a certified nurses' aid at the Castle Manor Nursing Home

3

in Hot Springs, South Dakota.[4] Doc. 49 at ¶¶ 38-39. Gates also spent time using the VA computers. A February 22, 2009, computer audit revealed that Gates had accessed a naked picture of himself from his Yahoo email account while he was using a VA computer.[5] Doc. 49 at ¶¶ 17-18. The computer guidelines specifically prohibited users from accessing pornographic web sites. Doc. 49 at ¶ 11; Doc. 29-6. On February 23, 2009, Gates was irregularly discharged from the program for accessing inappropriate material on the VA computer. Doc. 49 at ¶¶ 21, 22; Doc. 29-1. Although Gates admitted in his deposition that he does not know or have any proof that someone at the VA disclosed his personal information, Doc. 49 at ¶ 45; Doc. 48-2 at 20, he alleges in his complaint that a BHHCS nurse inadvertently disclosed the reason he was discharged to one of his former coworkers at Castle Manor, Doc. 1 at 3.

Following his discharge from the Hot Springs program, Gates filed an invasion of privacy complaint with the VA Office of Inspector General. Doc. 49 at ¶ 58. Thereafter, he sought admission to the Living Skills for Success (LSS) program at the Ft. Meade, South Dakota, VA

---

[4]Gates was investigated for allegedly inappropriately touching a Castle Manor resident. Doc. 49 at ¶¶ 40-42. He was eventually cleared of all charges. Doc. 49 at ¶ 43. Although Gates states in his complaint in CIV 11-3013-RAL and in his brief that his discharge from the Hot Springs program may have been due to bad "PR" from the Castle Manor incident, the four counts in CIV 11-3013-RAL allege invasions of privacy rather than a wrongful irregular discharge. Further, Gates testified in his deposition that he did not have any evidence that the VA kicked him out of the Hot Springs program for the Castle Manor incident and that he did not think that the VA fabricated the reason—viewing inappropriate content on a VA computer—that he was irregularly discharged. Doc. 48-2 at 15. None of the counts in Gates's complaint in CIV 12-3011-RAL mention the Castle Manor investigation. Rather, these counts allege that VA employees were retaliating against him for filing an invasion of privacy complaint with the VA Office of Inspector General. Thus, the investigation of Gates's alleged misconduct at Castle Manor ultimately is not relevant to Gates's claims against the Government or the question of whether the Government is entitled to summary judgment.

[5]The notice that the computer coordinator gave to Gates explaining his violation of the computer guidelines stated: "On February 22nd, 2009, from 7:00 am to 7:55 am you access [sic] computer #1, you did not sign in on the computer log. At 7:27 am computer #1 showed you logged into a Yahoo mail folder and accessed pornographic material (photos). You also went back into the same folder accessing the same photos at several different times." Doc. 25-10 at 2.

4

campus. Doc. 49 at ¶ 48. Gates had to wait approximately eighty days before he was admitted into the LSS program on July 30, 2009. Doc. 49 at ¶¶ 49, 59. Upon being admitted to the LSS program, each veteran received an LSS handbook setting forth the program's policies. Doc. 49 at ¶ 52. The LSS handbook notified veterans that their rooms would be subject to searches, Doc. 49 at ¶ 53, and stated that "weapons are prohibited on Government Property . . . . [p]ossession of such items could be prosecuted as a Federal Offense as well as result in immediate discharge from the program[,]" Doc. 49 at ¶ 51; Doc. 48-3 at 5. On September 8, 2009, Gates was irregularly discharged from the LSS program for violating the program's prohibition on weapons after a random search of his room revealed inhalants and a camping hatchet. Doc. 49 at ¶¶ 54-55, 64.

## II.  Standards of Review and Applicable Law

The Government has filed both a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(h)(3) and for summary judgment under Rule 56. Docs. 47, 50. A motion to dismiss for a lack of subject matter jurisdiction may be brought at anytime under Rule 12(h)(3). A Rule 12(h)(3) motion to dismiss is evaluated under the same standards as a motion to dismiss pursuant to Rule 12(b)(1). Berkshire Fashions, Inc. v. M.V. Hakusan II, 954 F.2d 874, 879 n.3 (3d Cir. 1992). Unlike a motion to dismiss for a lack of subject matter jurisdiction, a motion to dismiss under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); see also Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (Technically . . . a Rule 12(b)(6) motion cannot be filed after an answer has been submitted."). Here, the Government filed answers in both cases before it filed its Rule 12(b)(6) motion. However, courts may treat an untimely motion to dismiss under Rule 12(b)(6) as a Rule 12(c) motion for judgment on the pleadings. See Westcott, 901 F.2d at 1488 ("But since Rule

5

12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the . . . motion as if it had been styled a 12(c) motion." (internal marks and quotation omitted)). This Court will therefore construe the Government's motion to dismiss under Rule 12(b)(6) as a Rule 12(c) motion. A motion to dismiss brought under Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. Westcott, 901 F.2d at 1488. When considering such a motion to dismiss, courts must accept the plaintiff's factual allegations as true and construe all inferences in favor of the plaintiff. Retro Television Network, Inc. v. Luken Commc'n, LLC, 696 F.3d 766, 768 (8th Cir. 2012). To withstand such a motion to dismiss, "a complaint must contain enough facts to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Gates has alleged plausible claims in his complaints under the FTCA against the Government, so this Court at this stage denies the motion to dismiss and turns its focus to whether summary judgment should enter for the Government because of a lack of genuine issues of material fact on Gates's allegations.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th

Cir. 2011)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

Absent a waiver, sovereign immunity protects the United States and its agencies from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994). "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Brown v. United States, 151 F.3d 800, 803-04 (8th Cir. 1998) (quoting Meyer, 510 U.S. at 475). Thus, for a court to have jurisdiction over a claim against the United States, the United States must have waived its sovereign immunity and the claim must fall within the terms of that waiver. United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). The FTCA, under which Gates brings his claims, waives the sovereign immunity of the United States for certain torts committed by government employees acting within the scope of their employment. The FTCA's waiver of sovereign immunity is limited, however, to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."). The term "law of the place" in § 1346(b)(1) "refers to the substantive law of the state where the wrongful conduct took place." Washington v. Drug Enforcement Admin., 183 F.3d 868, 873 (8th Cir. 1999). Because Gates's claims arise out of conduct that occurred in South Dakota, the substantive law of South Dakota governs this action. Thus, for this Court to have jurisdiction over Gates's claims, they must be cognizable

7

under South Dakota law. See Eubank v. Kansas City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010) ("If a private person, under like circumstances, would be liable under the substantive law of the State where the act or omission occurred, then the FTCA waives sovereign immunity."). That is, Gates's claims must be such that the United States, if a private person under similar circumstances, "would be liable for the same conduct in [South Dakota]." Green Acres Enters., Inc. v. United States, 418 F.3d 852, 856 (8th Cir. 2005).

## III. Discussion

### A. CIV 11-3013-RAL

Gates's complaint in CIV 11-3013-RAL asserts that the Government invaded his privacy while he was a patient at the Hot Springs treatment program by subjecting him to random drug and alcohol testing (Count I); conducting video surveillance of patients' sleeping areas (Count II); monitoring his email activity while he was on a VA computer (Count III); and accidentally disclosing information pertaining to his discharge from the program to unauthorized individuals (Count IV). Gates's complaint is captioned "COMPLAINT Invasion of Privacy," Doc. 1, and South Dakota law recognizes the tort of invasion of privacy, see Truxes v. Kenco Enters., Inc., 119 N.W.2d 914, 917 (S.D. 1963). However, the counts in Gates's complaint do not expressly identify invasion of privacy as the basis for his claims, but refer to the United States Constitution, federal and state criminal statutes, and certain federal regulations. Doc. 1. Of course, claims that the Government violated the Constitution or federal regulations typically do not fall within the FTCA's waiver of sovereign immunity, see Washington, 183 F.3d at 874 ("[C]onstitutional tort claims are not cognizable under the FTCA."); Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992) ("The violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA."), and

8

Gates has not explained how the Government is liable to him under the criminal statutes he cites. Despite these shortcomings, the gravamen of Gates's complaint clearly is that the Government wrongfully intruded on his privacy. Indeed, the Government so recognizes in treating Counts I through IV of CIV 11-3013-RAL as alleging a claim for invasion of privacy. Gates does not object to this characterization of his claim. See Doc. 51. Having reviewed Gates's complaint, this Court believes that it is appropriate to treat Counts I through VI of CIV 11-3013-RAL as asserting causes of action against the Government through the FTCA for invasion of privacy under South Dakota law.

The Supreme Court of South Dakota in 1963 first recognized a common law tort action for invasion of privacy in Truxes, 119 N.W.2d at 917. The Court defined an actionable violation of the right to privacy as:

> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

Id. at 916 (citation omitted). The Court refined this definition in Montgomery Ward v. Shope, 286 N.W.2d 806 (S.D. 1979), explaining that the right of privacy is invaded by: "(a) Unreasonable intrusion upon the seclusion of another; or (b) Appropriation of the other's name or likeness; or (c) Unreasonable publicity given to the other's private life; or (d) Publicity that unreasonably places the other in a false light before the public." Id. at 808 n.1 (citing Restatement (Second) of Torts §§ 652A-E (1977)).

The definitions in Truxes and Shope suggest that in South Dakota there are several different theories or forms of the tort of invasion of privacy. This approach is consistent with

9

section 652A of the Restatement (Second) of Torts. See Fletcher v. Price Chopper Foods of Trumann, Inc., 220 F.3d 871, 875 (8th Cir. 2000) (explaining that the Restatement (Second) of Torts "delineates four separate torts grouped under the rubric 'invasion of privacy'"). The Supreme Court of South Dakota has not expounded on these theories in any great detail but has instead either relied on the definition in Truxes, see Maynard v. Heeren, 563 N.W.2d 830, 834 n.3 (S.D. 1997) (quoting Truxes definition of invasion of privacy); Krueger v. Austad, 545 N.W.2d 205, 215-16 (S.D. 1996) (same), or focused its discussion on the "intrusion upon seclusion" theory of the tort of invasion of privacy, see Baldwin v. First Nat'l Bank of the Black Hills, 362 N.W.2d 85, 88 (S.D. 1985) ("Only an unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another is regarded as tortious." (citing Shope, 286 N.W.2d 806)); Kjerstad v. Ravellette Publ'n, Inc., 517 N.W.2d 419, 424 (S.D. 1994) ("Before claimants may recover on an invasion of the right to privacy claim, they must demonstrate an unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another." (citing Baldwin, 362 N.W.2d at 88)).

The intrusion upon seclusion theory of invasion of privacy appears to be the thrust of the claims in Gates's complaint in CIV 11-3013-RAL. In its most recent discussion of the intrusion upon seclusion theory, the Supreme Court of South Dakota explained:

> To recover on an invasion of the right to privacy claim, a claimant must show an "unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another." Kjerstad v. Ravellette Publications, Inc., 517 N.W.2d 419, 424 (S.D. 1994) (citing Baldwin v. First Nat'l Bank of Black Hills, 362 N.W.2d 85, 88 (S.D. 1985)). Furthermore, "[t]he invasion must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities." Montgomery Ward v. Shope, 286 N.W.2d 806, 808 (S.D. 1979) (citations omitted).

Roth v. Farner-Bocken Co., 667 N.W.2d 651, 660-61 (S.D. 2003). In South Dakota, "whether

10

there is an offensive invasion of privacy involves a question of law. If the court first decides there is substantial evidence tending to show a serious, unreasonable, unwarranted and offensive interference with another's private affairs, then the case is one to be submitted to the jury." Shope, 286 N.W.2d at 810.

### 1.     Count I: Random Drug and Alcohol Testing

Count I of Gates's complaint in CIV 11-3013-RAL alleges that the Government invaded his privacy by subjecting him to random drug and alcohol tests to which Gates had consented in his treatment contract as a part of his acceptance into the Hot Springs drug and alcohol treatment program. Doc. 49 at ¶¶ 28-30; Doc. 29-3. When a plaintiff consents to certain conduct, that conduct rarely constitutes an "unreasonable, unwarranted, serious and offensive intrusion" upon the plaintiff's seclusion. Baldwin, 362 N.W.2d at 88. In Baldwin, the defendant bank disclosed financial information about the plaintiff to a Wyoming bank to whom the plaintiff had given permission to check his credit. Id. at 87. The plaintiff sued the defendant bank, alleging that the disclosure of information was a tortious invasion of his privacy. Id. at 88. The trial court granted the defendant bank a directed verdict and the Supreme Court of South Dakota affirmed, finding that the plaintiff's consent to have the Wyoming bank check his credit necessarily included consent to the defendant bank—which had previously extended the plaintiff credit—to disclose the information it did. Id. Because the plaintiff had consented to the defendant bank's conduct, the conduct was not an unreasonable intrusion upon the plaintiff's seclusion. Id.

Like the plaintiff in Baldwin, Gates consented to the conduct that he now claims invaded his privacy. Gates signed a treatment contract wherein he expressly agreed to submit to random drug and alcohol tests. Doc. 49 at ¶¶ 28-30; Doc. 29-3. Although Gates now disagrees with the VA's drug and alcohol testing policy, he was free to weigh the benefit of receiving treatment

11

against the cost of being subject to the drug and alcohol tests. Because Gates chose to consent to the drug and alcohol tests, the Government's conduct in subjecting him to random drug and alcohol testing as a matter of law was not an unreasonable intrusion upon Gates's seclusion. Moreover, Gates testified during his deposition that the random drug and alcohol testing did not do any actual damage to him. Doc. 48-2 at 19. Accordingly, this Court grants the Government's motion for summary judgment on Count I of Gates's complaint in CIV 11-3013-RAL.

### 2. Count II: CCTV System

Count II of Gates's complaint in CIV 11-3013-RAL alleges that the Government invaded his privacy by monitoring patients' sleeping areas via the CCTV system. Doc. 1 at 1, 5. The record belies this allegation. The Government submitted an affidavit from Domiciliary Chief Dean Cromwell explaining that the CCTV system was not used to monitor patients' sleeping areas and that any cameras installed near patients' sleeping areas were focused on public spaces such as exits and hallways. Doc. 37. Gates has not directed this Court to any evidence that refutes Cromwell's affidavit, and no such evidence exists in the record. Gates himself stated under oath that he did not know whether anyone had ever watched him over the CCTV system. Doc. 48-2 at 2. To the extent that Count II alleges invasion of privacy from the VA's use of the CCTV system in the public areas of the facility, such use was not a tortious invasion of Gates's privacy. Gates could not expect his actions in public areas to remain private and a reasonable person who, like Gates, had been informed of the CCTV system would not find its use in monitoring exits and public areas to be offensive. See Roth, 667 N.W.2d at 660-61. Thus, summary judgment in favor of the Government on Count II of Gates's complaint in CIV 11-3013-RAL is appropriate.

### 3.   Count III: Email

Count III of Gates's complaint in CIV 11-3013-RAL asserts that the Government intruded upon his private affairs by monitoring his use of his Yahoo email account. The Government argues that it is entitled to summary judgment on Count III because Gates did not have an objectively reasonable expectation of privacy on the VA's computers and because Gates consented to the monitoring. Gates disagrees, arguing that he had a right to "free and private" communications and that he was never told he had absolutely no right to privacy on VA computers. Doc. 51 at 7.

The Supreme Court of South Dakota in Roth required for an intrusion on seclusion claim an "unreasonable, unwarranted, serious and offensive" intrusion that "would be offensive and objectionable to a reasonable man of ordinary sensibilities." 667 N.W.2d at 660-61 (citations omitted). Similarly, other courts have made clear that in order to have an interest in seclusion or privacy that the law will protect, a plaintiff must have an objectively reasonable expectation of seclusion or privacy in the matter intruded upon. See Wiles v. Ascom Transp. Sys., Inc., 478 F. App'x 283, 293-94 (6th Cir. 2012) (holding that to prove intrusion upon seclusion in Kentucky, a plaintiff must show an intrusion into a private matter in which the plaintiff had a reasonable expectation of privacy); Kline v. Sec. Guards, Inc., 386 F.3d 246, 260 (3d Cir. 2004) (stating that Pennsylvania tort of intrusion upon seclusion requires that plaintiff have a reasonable expectation of privacy into matter intruded upon); Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., 306 F.3d 806, 812-813 (9th Cir. 2002) (interpreting section 652B of the Restatement (Second) of Torts, which sets forth the tort of intrusion upon seclusion, as requiring proof that the plaintiff had an objectively reasonable expectation of seclusion in the matter intruded upon); Fletcher, 220 F.3d at 877 ("A legitimate expectation of privacy is the touchstone

of the tort of intrusion upon seclusion."); Russ v. Causey, 732 F. Supp. 2d 589, 608 (E.D.N.C. 2010) (holding that in North Carolina, an intrusion upon seclusion occurs "where the solitude, seclusion, private affairs, or personal concerns of a person are invaded in circumstances where that person would otherwise have a reasonable expectation of privacy"); Lorenzo v. United States, 719 F. Supp. 2d 1208, 1215 (S.D. Cal. 2010) (applying California law and explaining that "[i]n order to show intrusion, a plaintiff must have an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source" (citation omitted)); Hough v. Shakopee Pub. Sch., 608 F. Supp. 2d 1087, 1117 (D. Minn. 2009) (applying Minnesota law and explaining that tort of intrusion upon seclusion requires a showing of an intrusion "into some matter in which a person has a legitimate expectation of privacy" (citation omitted)).

Gates is unable to demonstrate that he had an objectively reasonable expectation of privacy or seclusion in his use of a VA computer. First, the VA owned the computers and made them available for patients to use. Doc. 49 at ¶ 12; Doc. 29-6. Second, it is undisputed that Gates knew that the VA monitored use of its computers. Doc. 49 at ¶ 13; Doc. 48-2 at 7. The "Guidelines for Computer use by Patients"—which Gates signed when he entered the program and which stated "COMPUTER USE WILL BE MONITORED. IF GUIDELINES ARE VIOLATED, YOUR ACCESS WILL BE REMOVED IMMEDIATELY"—made clear that the VA's monitoring policy was designed to ensure compliance with the guidelines stated therein. Doc. 29-6. This document also put Gates on notice that the VA's monitoring policy extended to patients' email use in that one of the guidelines stated: "E-mail will be used only as a critical communication tool for Veterans and their families with the outside world. It will not be used to conduct business, send annoying or harassing messages, or circulate chain letters." Doc. 29-6. Gates's accessing a naked picture of himself through his Yahoo account was not use "only as a

14

critical communication tool[.]" Third, Gates testified during his deposition that no one at the VA ever informed him that his activities on VA computers would remain private. Doc. 49 at ¶ 14; Doc. 48-2 at 8. Even construing the facts in the light most favorable to Gates, Gates lacked an objectively reasonable expectation of privacy in accessing a naked picture of himself through his Yahoo account when he was using the VA's computer and was on notice that his use thereon could be monitored. Consequently, under the unique and undisputed facts of this case, summary judgment in favor of the Government on Count III of Gates's complaint in CIV 11-3013-RAL is proper.

### 4. Count IV: Disclosure of Confidential Information

Count IV of Gates's complaint in CIV 11-3013-RAL alleges that the VA placed "unreasonable publicity" on his private life and placed him in a "false light before the public"[6] by disclosing information pertaining to his discharge from the Hot Springs program to unauthorized persons. Doc. 1 at 5. Who Gates believes disclosed his private information and to whom is not clear. Gates alleges in his complaint that a BHHCS nurse accidentally disclosed to staff at Castle Manor that he was discharged from the Hot Springs program for accessing pornographic material on a VA computer. Doc. 1 at 3. In a Motion for Court Order, however, Gates asserts that the computer coordinator at the Hot Springs facility may have disclosed this information. Doc. 40 at 2-3. In his most recent filing, Gates returns to his belief that a BHHCS

---

[6]This Court might not have jurisdiction over such a claim. See Mills v. Iowa Bd. of Regents, 770 F. Supp. 2d 986, 998 (S.D. Iowa 2011) ("Federal law consistently holds that claims for false light invasion of privacy are barred by the libel and slander exception to the FTCA in 28 U.S.C. § 2680(h)."). Because Gates's claim in Count IV is less than clear and because the Supreme Court of South Dakota has never elaborated on the false light theory of invasion of privacy, this Court will consider whether summary judgment should enter viewing Gates's claim in Count IV as an intrusion on seclusion type of invasion of privacy claim.

nurse disclosed the information. Doc. 51 at 13. Other than Gates's allegations, there is no evidence that any such communication took place by anyone at BHHCS with anyone at Castle Manor. It is undisputed that Gates has neither proof nor knowledge that any VA employee made any such disclosure. Doc. 49 at ¶ 45; Doc. 48-2 at 20; Doc. 51 at 13.

A party opposing a properly supported motion for summary judgment "has an affirmative burden to designate specific facts creating a triable controversy." Garden v. Cent. Neb. Hous. Corp., 719 F.3d 899, 906 (8th Cir. 2013) (quoting Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004)). Here, Gates would bear the burden at trial of showing that a VA employee invaded his privacy by disclosing his confidential information. Because Gates has failed to come forward with any evidence on this issue,[7] summary judgment in favor of the Government on Count IV of his complaint in CIV 11-3013-RAL is appropriate. See id. (granting summary judgment against nonmoving party was proper where nonmoving party failed to offer any evidence on issues it would be required to prove at trial); Crotty v. Dakotacare Admin. Servs., Inc., 455 F.3d 828, 831 (8th Cir. 2006) ("When a party . . . has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion.").

### B. CIV 12-3011-RAL

Gates's complaint in CIV 12-3011-RAL alleges that the Government retaliated against him for filing an invasion of privacy complaint with the VA Office of Inspector General by

---

[7]Gates asserts in his brief that he does not have any evidence concerning Count IV because he could not afford to depose certain witnesses. Doc. 51 at 4-5. Gates is proceeding pro se and conducted discovery. Rule 56 applies equally to pro se litigants as to litigants represented by counsel. Indigency or lack of financial resources, while an obvious disadvantage to a litigant, does not give rise to a genuine dispute of material fact. It appears that the VA conducted an investigation into this issue and was unable to find any evidence that a disclosure of confidential information occurred. Doc. 31-4 at 4-5; Doc. 44-9 at 1.

delaying his admission to the LSS program at the Fort Meade, South Dakota VA campus (Count I); fabricating LSS medication protocols and erroneously determining that Gates was in violation of these protocols (Count II); changing LSS program rules to aggravate Gates and goad him into doing something that would justify an irregular discharge from the LSS program (Count III); denying Gates admission to a CWT program (Count IV); refusing Gates's request for help (Count V); and not showing him "even the smallest degree of Dignity or respect" while he was a patient in the LSS program (Count VI).[8] The complaint asserts that the Government's actions in Counts I through VI violated 42 U.S.C. § 9501, SDCL Chapter 27A-12, and "VA policies which forbid retaliation in any form." CIV 12-3011-RAL, Doc.1. The Government argues that Gates's complaint in CIV 12-3011-RAL should be dismissed under Rule 12(b)(6) because the framework for retaliation claims falls under Title VII of the Civil Rights Act of 1964 rather than the FTCA. The Government argues further that even if Gates had relied on Title VII, dismissal under Rule 12(h)(3) would be appropriate because Gates was not an employee of the VA. In the alternative, the Government moves for summary judgment, arguing that Gates's retaliation claims are unsupported by evidence and that there are no genuine issues of material fact.

Gates's complaint in CIV 12-3011-RAL does not identify which particular VA policies he believes the VA violated. As for the federal statute Gates cites, 42 U.S.C. § 9501 is titled "Bill of Rights" and was enacted as part of the Mental Health Systems Act. It provides in relevant part: "It is the sense of the Congress that each State should review and revise, if

---

[8] Gates's Complaint in CIV 12-3011-RAL also contains a second Count VI, which Gates probably meant to label Count VII. In this second Count VI, Gates asserts a claim based on the random drug and alcohol tests while a patient at LSS. This Court interprets this Count VI as alleging that the VA committed the tort of invasion of privacy. For the reasons discussed earlier in this Opinion and Order, summary judgment is proper for the Government on such a claim.

17

necessary, its laws to ensure that mental health patients receive the protection and services they require; and in making such review and revision should take into account the . . . following . . . ." 42 U.S.C. § 9501. The statute goes on to list the rights a mental health patient should receive. Id. Even if the VA had violated its policies and 42 U.S.C. § 9501, this would not, standing alone, provide Gates with a cause of action under the FTCA. See Klett, 965 F.2d at 589. As the Eighth Circuit has explained, "[f]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons." Id. (quoting Gelley v. Astra Pharm. Prod., Inc., 610 F.2d 558, 562 (8th Cir. 1979)).[9] Thus, the issue becomes whether SDCL Chapter 27A-12, the chapter of the South Dakota Codified Laws that Gates cites, provides him with a cause of action against the VA.

Title 27A of the South Dakota Codified Laws concerns the treatment of the mentally ill. Chapter 27A-12 of Title 27A enumerates the rights of mental health patients, including the right to "a humane environment that affords appropriate individual privacy, individual dignity and reasonable protection from harm." SDCL § 27A-12-1. Chapter 27A-12 goes on to explain that a person who exercises his or her rights under Title 27A is "not subject to any reprisal, including reprisal through the actual or threatened denial of any treatment, benefits, privileges, or other rights." Id. § 27A-12-33.1. Although neither the Supreme Court of South Dakota nor the parties in this case have addressed whether Title 27A provides a private cause of action, SDCL § 27A-1-

---

[9]Even if the FTCA allowed Gates to sue the United States for violations of 42 U.S.C. § 9501, several courts have held that § 9501 does not create any enforceable federal rights. Monahan v. Dorchester Counseling Ctr., 961 F.2d 987, 994-95 (1st Cir. 1992) (interpreting 42 U.S.C. § 10841, which restates the provisions of § 9501); Mele v. Hill Health Ctr., 609 F. Supp. 2d 248, 255 (D. Conn. 2009); Smith v. Au Sable Valley Cmty. Mental Health Servs., 431 F. Supp. 2d 743, 750 (E.D. Mich. 2006).

6 suggests that it does. This section reads:

> Any officer required to perform an act, and any person accepting an appointment under the provisions of this title, who shall intentionally refuse or neglect to perform his duty as herein prescribed, shall be guilty of a Class 1 misdemeanor, besides being liable to an action for damages.

Id. § 27A-1-6.

Whether Title 27A, enumerating rights of mental health patients, applies to someone like Gates who voluntarily enrolled in the VA's drug and alcohol treatment program is debatable. Yet even if this Court assumes that Title 27A applies to Gates and provides him with a private cause of action for retaliation, the Government is still entitled to summary judgment on Counts I through VI of Gates's complaint in CIV 12-3011-RAL. As noted above, "[w]hen a party . . . has the burden of proof on an issue, it must present evidence sufficient to create a genuine issue of material fact to survive a properly supported summary judgment motion." Crotty, 455 F.3d at 831. Rule 56(c)(1) of the Federal Rules of Civil Procedure requires that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ." Although Gates would bear the burden at trial of proving that VA employees retaliated against him for filing a complaint with the Office of Inspector General, his memorandum in opposition to the Government's motion for summary judgment does not contain any citation to the record to support his assertions that this took place. Gates's pro se status does not excuse him from responding to the Government's motion with "specific factual support for his claims to avoid summary judgment." Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001). Nor is it this Court's obligation to dig through the file in search of factual support for Gates's assertions. See Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007) ("In

ruling on a motion for summary judgment, the district court 'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim . . . .'" (quoting Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1069 (8th Cir. 2005))). Nevertheless, this Court has reviewed the entire record and has found nothing therein to create a genuine issue of material fact on Gates's retaliation claims. Gates was in fact admitted to the LSS program, albeit later than he wanted, and his discharge from the LSS program was undisputedly for violating the policy against possession of a weapon. Doc. 48-3 at 5; Doc. 49 at ¶¶ 51, 54-55, 62, 64. Because Gates has failed to come forward with specific facts demonstrating that there is a genuine issue of material fact and because this Court's review of the record revealed no such fact, the Government is entitled to summary judgment on Counts I through VI of Gates's complaint in CIV 12-3011-RAL.[10]

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that the Government's motion to dismiss is denied, but that the Government's motion for summary judgment, Doc. 47, is granted.

Dated January 28th, 2014.

BY THE COURT:

*[signature]*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

[10] The Government argues that some of the remedies Gates seeks in CIV 11-3013-RAL and CIV 12-3011-RAL are inappropriate because he asks for non-monetary relief and relief on behalf of other veterans. Because Gates is not entitled to any relief, it is unnecessary to reach these arguments.

20